UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

BRANDON B.[1], )
 )
   Plaintiff, )
 )
v. ) CIVIL NO. 2:21cv208
 )
KILOLO KIJAKAZI, Acting )
Commissioner of Social Security, )
 )
   Defendant. )

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Supplemental Security Income (SSI) as provided for in the Social Security Act. Section 405(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability insurance benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental

---

[1] To protect privacy, Plaintiff's full name will not be used in this Order.

impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3).  It is not enough for a plaintiff to establish that an impairment exists.  It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity.  *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979).  It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff.  *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings. *Scott v. Astrue*, 734, 739 (7th Cir. 2011); 42 U.S.C. §405(g).  "Substantial evidence is defined as 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see also Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).  "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after a hearing, the Administrative Law Judge ("ALJ") made the following findings:

> 1. The claimant attained age 18 on March 14, 2014, and was eligible for supplemental security income benefits as a child for the month preceding the month in which he attained age 18.  The claimant was notified that he was found

2

        no longer disabled as of October 7, 2014, based on a redetermination of disability under the rules for adults who file new applications.

2. Since October 7, 2014, the claimant has had the following severe impairments: attention deficit hyperactivity disorder (ADHD), oppositional defiance disorder, depression and anxiety (20 CFR 416.920(c)).

3. Since October 7, 2014, the claimant did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record the undersigned finds that since October 7, 2014, the claimant has had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he can perform simple and detailed tasks, but not complex tasks equating to unskilled and semi-skilled work; can deal with occasional changes in work processes and environment; no work with the general public (face to face communication and/or work over the phone); and can interact on an incidental superficial work related contact with coworkers and supervisors (defined as brief, succinct, concise, cursory communication relevant to the task being performed).

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on March 15, 1996 and is a younger individual age 18-49 (29 CFR 416.963).

7. The claimant has at least a high school education and is able too communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.978).

9. Since October 7, 2014, considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10. The claimant's disability ended on October 7, 2014, and the claimant has not become disabled again since that date (20 CFR 416.987(e) and 416.920(g)).

(Tr. 24-30).

3

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed his opening brief on February 2, 2022. On March 8, 2022, the defendant filed a memorandum in support of the Commissioner's decision, to which Plaintiff replied on March 24, 2022. Upon full review of the record in this cause, this court is of the view that the ALJ's decision must be remanded.

A five-step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). From the nature of the ALJ's decision to deny benefits, it is clear that step five was the determinative inquiry.

Plaintiff received SSI benefits as a child, having been found disabled in 2006 on the basis of impairments including ADHD and oppositional defiant disorder. (Tr. 112, 384). When he

reached age 18 his eligibility for benefits was redetermined, and on October 6, 2014, it was determined that he was no longer disabled beginning October 7, 2014. (Tr. 74, 95-98). That determination was upheld by a State agency disability hearing officer. (Tr. 103-20, 450-67). Following a timely request, Plaintiff appeared unrepresented at a hearing before ALJ Cindy Martin in Valparaiso, Indiana, on June 20, 2018. (Tr. 37-73). Plaintiff waived his right to representation. (Tr. 40-41, 159). The ALJ issued an unfavorable decision on September 25, 2018, finding that Plaintiff's disability had ended on October 7, 2014. (Tr. 19-36; 42 U.S.C. §1382c(a)(3)(A)).

Plaintiff was 18 years old as of the date his disability was found to have ended and 22 years old as of the date of his hearing. (Tr. 103). He graduated from high school in May 2014. (Tr. 47-48, 185). He has never worked. (Tr. 46-47, 55, 174).

Plaintiff attended a series of alternative schools, with special education instruction as well as therapy, due to an emotional disability. (Tr. 273-316, 329-42). He had difficulty sleeping beginning at age five and was often tired in class. (Tr. 288). He was verbally and physically aggressive and defiant towards students and staff, sometimes with outbursts lasting hours, and was argumentative and threatening with family members. (Tr. 280, 284-88, 297-98, 307-09, 658). He was psychiatrically hospitalized at ages six and ten for anger issues (Tr. 443); he threatened to stab someone and had knives "hidden in the couches." (Tr. 658). Although he made progress, he continued to be disruptive, manipulative, and aggressive through 12th grade. (Tr. 334-35).

Plaintiff has been prescribed medications such as Adderall, Celexa, Lamictal, Zyprexa, Ativan, Prozac, Abilify, hydroxyzine, Geodon, and Zoloft for depression, anxiety, oppositional defiant disorder ("ODD"), ADHD, and PTSD. (Tr. 274, 285, 288, 346, 422, 441, 474, 483,

5

495-96, 510, 554, 658). On psychiatric visits at Regional Mental Health Center in 2013 and 2014, including after he turned 18, he reported social anxiety and displayed poor insight and judgment. (Tr. 346-62). He generally reported he was not depressed or anxious in 2015 and early 2016, although he was "not able to function without Adderall XR," was scared of driving, lived "an isolated life," and continued to display poor insight and judgment. (Tr. 422-39). Plaintiff switched providers to Porter-Starke Services in August 2016, reporting issues with depression, anger, and attention. (Tr. 442-48). He has become better at managing his anger, but it escalates very quickly and he still has outbursts. He has severe bouts of depression, which combined with his anxiety "makes it all very bad." He isolates from others and has low motivation. He has panic attacks, cannot be in crowds of people, constantly worries, and is highly irritable. (Tr. 442). His sleep is poor. (Tr. 443). Therapist Maritza Wysocki, LCSW, assessed social anxiety disorder, major depressive disorder with anxious distress, disruptive mood dysregulation disorder, and ODD. (Tr. 445).

Plaintiff saw psychiatrists Sonia Yballe, M.D., and Mitchell Goldstein, M.D., as well as therapists, at Porter-Starke in 2017 and 2018, reporting ongoing attention problems, depression, anxiety, and anger. (Tr. 474-521, 522-24). He often appeared disheveled and displayed psychomotor agitation, anxious mood and/or affect, and limited judgment and/or insight. (Tr. 475, 482, 484, 500, 504, 508, 510, 516, 519). Plaintiff reported feeling very anxious in an early session with Dr. Goldstein because he did not know Dr. Goldstein (Tr. 514), and displayed agitation. (Tr. 516). He breaks things when he is angry and has scratched himself. It bothers him to hear someone chewing or breathing loudly. (Tr. 514). Dr. Goldstein prescribed Geodon to address Plaintiff's anger (Tr. 518), but this and Zoloft were stopped due to severe side effects.

6

(Tr. 507, 510). In March 2017, Dr. Yballe stopped Plaintiff's ADHD medication because there were "other issues of more clinical relevance": he was depressed and unmotivated, felt anxious all the time, did not work, and had social anxiety. (Tr. 499). Then, in May 2017, Plaintiff reported difficulty focusing and continuing depression, and Dr. Yballe added Adderall and Prozac. (Tr. 495-96). Plaintiff reported in June that these helped (Tr. 491), but thereafter continued to report anxiety, anger, depression, and issues with attention and hyperactivity, and his Adderall was increased. (Tr. 474, 481-82, 483-85).

     Dr. Goldstein referred Plaintiff for a psychological assessment with John M. Spores, Ph.D., and Quynh Chau, Psy.D., in May 2018, "to differentiate between autism and personality disorder." (Tr. 656, 476). Dr. Goldstein noted that Plaintiff seemed to be "lower functioning." (Tr. 656). Plaintiff reported sad mood; recurring crying spells; excessive worry; extreme nervousness, anxiety, and paranoia during social interactions; problems maintaining relationships; sensitivity to sensory inputs; low self-worth; excessive dependency upon others; social isolation; and eccentric and strange behaviors. (Tr. 656-57). He displayed an above-average activity level with evidence of psychomotor agitation, and his legs repeatedly shook during the assessment, which he attributed to anxiety. (Tr. 657). Plaintiff has severe anxiety and difficulty following orders unless they are specific, is unable to follow directions, and chooses not to adhere to a structural chain of command. (Tr. 658).

     Testing was negative for autism spectrum disorder. (Tr. 660). Drs. Spores and Chau found that Plaintiff's symptoms and behaviors "produce avoidance and isolation eventually leading to marked dependency needs." He is "likely to display marked anxiety and fear of social judgment in most interpersonal situations." (Tr. 663). His "[c]linical syndromes indicate marked anxiety and

depression consistent with self-reports," and he "may feel futile in efforts to improve the self, leading to diminished self-care…." (Tr. 664). The examiners diagnosed avoidant personality disorder, with avoidant and self-defeating traits; generalized anxiety disorder; and major depressive disorder. (Tr. 665).

At the hearing, Plaintiff testified that he has been trying to save money out of his Social Security checks in order to buy a computer so he can take college classes online. (Tr. 47-48). He has not taken a driving test; if he tries to "even so much as sit behind the wheel of a car, [he] completely freeze[s]." (Tr. 48-49). He gets rides from family and family friends. (Tr. 49). He has not used public transportation at all since 2014. (Tr. 49-50). He took the bus when he was in high school, with "minor issues" such as altercations with other students or arguments with drivers or "bus driver attendees." (Tr. 50-51). He was removed from the bus a few times. (Tr. 51).

Plaintiff tires easily, but he is not sure why. (Tr. 51). He spends most of his time alone in his room. He plays video games from time to time. (Tr. 52). He avoids playing online elements of games because he does not like dealing with other people. He does some chores like putting up dishes and cleaning litter boxes, and occasionally switches the laundry if asked, although he often gets preoccupied after being asked and will have to be told repeatedly before he does the chore. (Tr. 53). Whenever he starts to get tired, he stops what he is doing and puts something on TV, because he cannot fall asleep otherwise. (Tr. 53-54). He usually goes with his mom to a store once a month. He has one friend, Scott, whom he has known since he was ten or 11, and also interacts with Scott's brother, Steve, who is a family friend. Plaintiff checks the mail and takes out the garbage. At home he usually wears shorts, and will change them maybe every four days. He does not shower as often as he should because he lacks motivation. (Tr. 54). He takes

Adderall, hydroxyzine, and Lamictal. (Tr. 54-55). They made him extremely drowsy when he first started taking them, which has improved, but he sometimes still gets sleepy at unusual times. (Tr. 55).

Plaintiff has never worked. He has attempted to help his family friend, Steve, with projects like repairs of Steve's home, but that has never gone well. (Tr. 55-56). Plaintiff tries to help for a few minutes, then starts to believe he is doing everything the wrong way and retreats to an area away from everybody. (Tr. 56). Plaintiff has been told he has problems with authority; he disagrees in that he does not specifically have respect for someone because they have authority, but will respect people if he sees that they deserve respect. (Tr. 57).

Mother also testified at the hearing. (Tr. 57-59). She stated that Plaintiff was in two different "behavioral school[s]" from the third grade onward. One time, Plaintiff's case manager gave Mother a number for a company Plaintiff could use for rides to and from appointments, but when Mother set up a ride for Plaintiff to go to the dentist, he was too scared to go and she had to cancel the appointment. Mother does not work and receives SSI. (Tr. 58). She does not drive; their friend Steve or Mother's sister drive them. (Tr. 59).

Plaintiff explained that he became too scared to take the cab to his appointment because he would be going alone and would have had to call to be picked up afterward. (Tr. 59-60). He cannot call to order food because he panics and does not know what to say whenever he has to interact with someone he does not know. His medication does not really help with this. He still has depression despite some improvement with medication adjustment. (Tr. 60).

In support of remand, Plaintiff first argues that the ALJ failed to address the examining opinion of Drs. Spores and Chau. Based on their extensive May 2018 psychological examination

9

and testing of Plaintiff, Drs. Spores and Chau found that Plaintiff's "[f]eelings of persecution, mistrust in others, sensitivity to social rejection, and self-defeating behaviors produce avoidance and isolation eventually leading to marked dependency needs," and that he is "likely to display marked anxiety and fear of social judgment in most interpersonal situations." (Tr. 663). Plaintiff asserts that the ALJ referred to this examination in her decision but ignored Drs. Spores' and Chau's conclusions and failed to weigh them in evaluating the opinion evidence. (Tr. 28-29). *See* 20 C.F.R. §416.927(c) ("[W]e will evaluate every medical opinion we receive").

The ALJ gave "some weight" to the opinions of the State agency reviewing psychologists, who both found Plaintiff could interact sufficiently with coworkers and supervisors. (Tr. 28). However, the opinion of Drs. Spores and Chau supports greater limitation both because of the marked anxiety they found Plaintiff would likely display when interacting with others, and because of his avoidance, isolation, and "marked dependency needs." (Tr. 663). Plaintiff contends that the ALJ was required to address these findings. *Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir. 2000); *see also Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003) ("An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice") (citation omitted), 20 C.F.R. §416.927(c)(1) ("Generally, we give more weight to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you").

Here, the ALJ described some of the examiners' observations, including Plaintiff's disheveled appearance and psychomotor agitation, but found that the examination results were otherwise "generally benign." (Tr. 28). Plaintiff contends that the ALJ erred in substituting her

assessment of the examination findings for the psychologists' own stated conclusions. *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000) (an ALJ may not substitute her judgment for a medical source's opinion "without relying on other medical evidence or authority in the record") (citations omitted). The ALJ also failed to address the fact that Plaintiff's agitation during this examination was consistent with his treating sources' repeated observations. (*See* Tr. 475, 484, 500, 504, 508, 510, 516). This supports the examiners' opinion and the conclusion that Plaintiff displays marked anxiety in interpersonal settings. 20 C.F.R. §416.927(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion").

Plaintiff further asserts that even assuming that the findings of Drs. Spores and Chau did not constitute an "opinion" that required weighing, the ALJ should have obtained an updated medical opinion rather than evaluating these objective findings (and the others that post-dated the State agency reviews) herself. Plaintiff argues that the ALJ's failure to recognize that Drs. Spores and Chau had provided an opinion and/or obtain an updated opinion was especially significant because Plaintiff was unrepresented. "Social Security proceedings are inquisitorial rather than adversarial," and it is the ALJ's "duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000) (citation omitted). Therefore, the ALJ has a duty to "develop a complete record…." *Kendrick v. Shalala*, 998 F.2d 455, 456-57 (7th Cir. 1993). That duty is heightened with unrepresented claimants, *Luna v. Shalala*, 22 F.3d 687, 692 (7th Cir. 1994), although it applies "even when the claimant is represented by counsel." *Elbert v. Barnhart*, 335 F. Supp. 2d 892, 905 (E.D. Wis. 2004) (citations omitted).

In response, the Commissioner argues that the ALJ acknowledged Plaintiff's complaints in the report such as feeling anxiety, being easily overwhelmed, and having difficulty following orders, yet noted that on examination Plaintiff demonstrated some normal abilities and communication skills, and argues that this discussion shows the ALJ did not substitute her assessment for the examiners' conclusion but rather accurately summarized their findings. However, the significance the ALJ attributed to normal findings from Drs. Spores and Chau's examination, even while she acknowledged abnormal findings such as psychomotor agitation, is unsupported because the ALJ ignored the examiners' conclusions.

The Commissioner also argues that Plaintiff failed to establish that Drs. Spores and Chau's report constituted an "opinion". While the Commissioner cites the regulatory definition of medical opinions, it does not explain why the examiners' conclusions do not qualify. Rather, the Commissioner refers to the ALJ's description of the report as a "detailed evaluation" and notes that the ALJ considered separately it from the opinion evidence. However, because the ALJ did not address the examiners' conclusions at all, her decision does not provide any reason to believe that she considered those conclusions, and then rejected them because they did not constitute an opinion. In any event, Drs. Spores and Chau's conclusions clearly qualify as "statements from acceptable medical sources that reflect judgments about the nature and severity of [Plaintiff's] impairment(s), including [his] symptoms, diagnosis and prognosis, what [he] can still do despite impairment(s), and [his] physical or mental restrictions." 20 C.F.R. §416.927(a)(1). Drs. Spores and Chau extensively described the effects of Plaintiff's symptoms and diagnoses, the most significant being that his symptoms "produce avoidance and isolation eventually leading to marked dependency needs" and that he is "likely to display marked anxiety and fear of social

12

judgment in most interpersonal situations." (Tr. 663). Drs. Spores and Chau suggested therapeutic techniques to target "interpersonal deficits". (Tr. 665-66). As the ALJ did not adequately consider the findings or import of Drs. Spores and Chau's report, nor identify legitimate reasons for rejecting their opinion, remand is warranted.

Next, Plaintiff argues that the ALJ's RFC assessment is not supported by substantial evidence. The ALJ found that Plaintiff can perform simple and detailed but not complex tasks; that he can deal with occasional changes in work processes and environment; that he cannot work with the public; and that he can only have incidental, superficial contact with coworkers and supervisors, "defined as brief, succinct, concise, [and] cursory communication relevant to the task being performed." (Tr. 26).

Plaintiff contends that the ALJ did not explain how she reached these limitations apart from weighing the State agency reviewing psychologists' opinions. The ALJ found that the initial-level, October 2014 opinion, which limited Plaintiff to semiskilled tasks as well as the character of his interaction with coworkers and supervisors, did not reflect the full record's support for precluding Plaintiff's interaction with the public due to his anxiety. (Tr. 28). The ALJ found that the reconsideration- level opinion reflected Plaintiff's social limitations but only assigned that opinion "some" weight because it did not include any limitation on task complexity, which the ALJ believed Plaintiff required due to his ADHD. (Tr. 28). The ALJ effectively combined the two psychologists' opinions into her ultimate RFC. Plaintiff argues this was insufficient because, while the RFC is a legal decision for the ALJ to make, merely reviewing the psychologists' flawed opinions could not provide the requisite logical bridge from the evidence to the ALJ's conclusion. *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014). In support of her

13

findings, the initial-level reviewer cited some school evidence; treatment records she described as noting no suicidal ideation, good appetite, normal sleep, euthymic mood, logical thought processes, and poor insight and judgment; and Plaintiff's reported activities. (Tr. 384). The only treatment evidence to which this reviewer had access was Plaintiff's 2013 and 2014 treatment at Regional Mental Health Center, which only included three visits after he graduated high school (Tr. 346-62), and did not reflect reports such as Plaintiff's increasing social isolation and withdrawal after leaving school. (Tr. 422-39, 442-48, 474-524). The reconsideration-level reviewer summarized the reports and findings from Plaintiff's initial Porter-Starke assessment and Plaintiff's reported activities. (Tr. 452; *see* Tr. 442-48). However, that reviewer did not have access to the Porter-Starke records after Plaintiff's initial visit or the May 2018 examination.

      Plaintiff points out that the ALJ failed to address other limitations on his ability to interact and complete tasks. For example, the ALJ found that Plaintiff's ODD was a severe impairment (Tr. 24), which necessarily means that she believed it resulted in work-related limitations. *See* 20 C.F.R. §416.920(c). In describing the basis for her RFC restrictions, the ALJ only referred to Plaintiff's anxiety and ADHD. (Tr. 28). She did not address Plaintiff's ODD or his resulting anger or defiance issues in her RFC.  Additionally, the psychologist who conducted the initial-level review opined that Plaintiff "could work with a supervisor who was normally considerate and positive, but would have problems with a supervisor who was often negative, critical, or quarrelsome." (Tr. 370). The ALJ failed to address the fact that Plaintiff's ability to get along with others, especially authority figures, is unpredictable, and that he can be defiant or explosive. (*See, e.g.*, Tr. 236-37, 442, 481-82, 514, 518). There is no evidence that Plaintiff only responds that way to people who are unusually negative, critical, or quarrelsome.

14

The ALJ did not ask the VE about the vocational impact of Plaintiff's outbursts of anger or defiance. (*See* Tr. 60-72). The Seventh Circuit requires that an ALJ "orient the VE to the totality of a claimant's limitations." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010). Because Plaintiff's claim had progressed to Step Five, the ALJ's decision "hinged on the validity of the hypothetical question" and the underlying RFC assessment. *Young*, 362 F.3d at 1004-05. Plaintiff argues that the ALJ's finding that Plaintiff could adjust to other work, based on the VE's response to hypothetical questions that did not reflect Plaintiff's ODD, is not supported by substantial evidence.

Plaintiff further notes that the ALJ also failed to indicate how she considered Plaintiff's and Mother's undisputed reports that Plaintiff requires repeated and detailed instructions about how any task is to be done. (Tr. 53, 56, 59, 193, 196-97, 204, 215, 224, 227, 233, 236, 474, 658). This need for explicit instructions is impacted by Plaintiff's difficulty interacting with anyone he does not know. Plaintiff thus concludes that he would require more than "brief, succinct, concise, [and] cursory" instruction about tasks asked of him even if he were relatively comfortable with the person asking. (Tr. 26). In response to the ALJ's attempt to quantify the description of the assistance Plaintiff needs, the VE said that no work would be available if an individual needed extra supervision in the form of a supervisor's assistance for five minutes every hour. (Tr. 68-69).

In response, the Commissioner argues that Plaintiff does not propose specific limitations that would suffice to accommodate Plaintiff's ODD. However, it was not Plaintiff's burden to identify specific limitations the ALJ should include in her RFC to accommodate impairments she herself found severe, and there is no presumption that an unrepresented claimant has made his best case before the ALJ. *Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007) (citation omitted).

Clearly, the ALJ's restriction of Plaintiff to only incidental, superficial contact with coworkers and supervisors because of his anxiety does not account for his unpredictable anger and defiant behavior. Furthermore, the ALJ did not ask the vocational expert about any impact of anger or defiance outbursts.

Plaintiff acknowledges that there is a tension between his difficulty interacting with others due to his anxiety and behavioral extremes and his need for repeated and detailed instructions in order to accomplish any task. Plaintiff's and Mother's testimony demonstrate that at times he cannot get to the point of receiving the instructions he would need to accomplish a task because of his difficulty interacting with others. (*See* Tr. 55-56, 59-60). These compounding difficulties are part of why Plaintiff contends he would not be able to withstand competitive work.

For the reasons discussed above, this Court finds that the ALJ's RFC assessment is not supported by substantial evidence. Thus, remand is required on this issue.

Next, Plaintiff argues that the ALJ improperly discounted his subjective symptoms. The ALJ found that the medical evidence was inconsistent with Plaintiff's allegations because of "generally" benign mental status examination findings (Tr. 27-28), and that Plaintiff's daily activities were "not limited to the extent one would expect" given his allegations. (Tr. 29). Plaintiff contends that this analysis was legally improper and unsupported.

Plaintiff notes that the ALJ was prohibited from rejecting his allegations solely because they were not fully supported by objective evidence. *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995); 20 C.F.R. §416.929(c)(2); SSR 16-3p, 2016 WL 1119029 at *5. Plaintiff further notes that the ALJ's claim that Plaintiff's examinations only showed "occasional" positive findings and were otherwise generally benign was misleading. (Tr. 27, citing Tr. 346-62, 405, 422, 424, 426,

16

428, 430, 432, 434, 436, 438, 445, 475, 484, 500, 504, 508, 516-17). Plaintiff's treating mental health providers, especially from 2016 onward, consistently observed psychomotor agitation, anxious mood and/or affect, and limited judgment and/or insight. (Tr. 422-39, 475, 482, 484, 500, 504, 508, 510, 516, 519).

Plaintiff also contends that the ALJ erred in her holding that Plaintiff's activities were not limited to the extent she would expect given his allegations. Plaintiff asserts that his ability to do some limited chores at home is not inconsistent with his allegations or consistent with work activity. (Tr. 53, 192-93, 214-15, 223-24, 231-33, 236). Plaintiff points out that the record does not reflect regular interaction with anyone other than Plaintiff's family, his treatment providers, and two friends whom he has known since he was young. (Tr. 54). Plaintiff's anxiety limits his ability to engage in projects even with his family friend, Steve. (Tr. 56, 59).

Also, while the ALJ discounted the value of Mother's statements as opinion evidence, citing one Function Report (Tr. 28-29, citing Tr. 231-38), she failed to consider that those statements are consistent with and support Plaintiff's allegations, including his ongoing anger issues, anxiety, difficulty performing tasks and following instructions, and social withdrawal. (Tr. 57-59, 108, 191-98, 214-15, 231-38); SSR 16-3p, 2016 WL 1119029, at *6-7 (ALJ will consider factors such as a family member's statements about a claimant's symptoms), 20 C.F.R. §416.929(c)(3).

This Court agrees with Plaintiff that the ALJ did not demonstrate any inconsistency between Plaintiff's allegations and the evidence and her analysis was legally insufficient. Thus, remand is required for a proper analysis of Plaintiff's subjective symptoms

17

Conclusion

On the basis of the foregoing, the decision of the Commissioner is hereby REVERSED AND REMANDED for further proceedings consistent with this Opinion.

Entered: March 31, 2022.

s/ William C.  Lee
William C. Lee, Judge
United States District Court
